UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK ARNE FRIEDMAN,<br><br>  Plaintiff,<br><br>v.<br><br>BROOKE JENKINS, et al.,<br><br>  Defendants. | Case No. 23-cv-05036-JSW<br><br>**ORDER GRANTING DEFENDANT JENKINS' MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 17 |

Now before the Court for consideration is the motion to dismiss the Complaint filed by Defendant Brooke Jenkins. The Court has considered the parties' papers and relevant legal authority, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS the motion to dismiss, with leave to amend.

## BACKGROUND

Plaintiff Jack Arne Friedman was previously employed as an investigator by the Office of the San Francisco District Attorney, Independent Investigations Bureau. (Dkt. No. 1, Compl., ¶ 10.) In that role, Plaintiff investigated officer-involved shootings and recommended whether criminal charges should be filed against the officer. (*Id.*)

In November 2020, Plaintiff prepared a request and affidavit for an arrest warrant for Officer Samayoa for the shooting death of a carjacking suspect. (*Id.* ¶¶ 11-12.) A California Superior Court found that Plaintiff's affidavit established probable cause and issued an arrest warrant. (*Id.* ¶ 12.) Former District Attorney Chesa Boudin then brought criminal charges against Officer Samayoa. (*Id.* ¶ 13.)

San Francisco voters subsequently recalled Boudin, and Defendant Jenkins was appointed

to serve as District Attorney. (*Id.* ¶ 14.) As District Attorney, Jenkins took a second look at the charges pending against Officer Samayoa. Members of Jenkins' staff directed District Attorney Investigator Daniel Lundberg to prepare a memorandum regarding the decision to charge Officer Samayoa. (*Id.* ¶ 17.)

Plaintiff alleges that he feared that Investigator Lundberg's memorandum would seek to undermine Plaintiff's affidavit and that Plaintiff would be blamed for dismissal of charges against Officer Samayoa. (*Id.* ¶ 20.) Plaintiff communicated that concern to Jenkins, along with his concerns that Investigator Lundberg was being coerced to provide false testimony. (*Id.* ¶¶ 20-22.) Plaintiff made two of these communications in December 2022 and one in January 2023. (*Id.*)

At the end of January 2023, Jenkins placed Plaintiff on administrative leave. (*Id.* ¶ 25.) Plaintiff alleges that Jenkins also imposed a gag order on Plaintiff, preventing him from speaking about the decision to charge Officer Samayoa. (*Id.*)

In February 2023, Jenkins exercised her prosecutorial discretion to dismiss the charges against Officer Samayoa. (*Id.* ¶ 16.) In an announcement accompanying her decision, Jenkins claimed that "[i]t appears that the case was filed for political reasons and not in the interests of justice. . . Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with this prosecution." (*Id.* ¶ 26.)

Plaintiff filed this action against Jenkins and the City and County of San Francisco on October 2, 2023. He alleges that Jenkin's conduct (1) violated his First Amendment right to freedom of speech in violation of 28 U.S.C. § 1983, and (2) constituted retaliation for making protected disclosures in violation of California Labor Code section 1102.5.

The City and County of San Francisco answered the Complaint on November 15, 2023. (Dkt. No. 16.) Jenkins now moves to dismiss the claims against her. (Dkt. No. 17.)

**ANALYSIS**

**A.    Applicable Legal Standard.**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not

2

required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

**B.     The Court Dismisses Plaintiff's Section 1983 Claim Against Jenkins.**

Jenkins argues that Plaintiff's Section 1983 claim for infringement of his First Amendment right to free speech should be dismissed for three reasons. First, Plaintiff failed to plead sufficient facts to show that he was prevented from speaking as a private citizen on a matter of public concern. Second, even if Jenkins infringed Plaintiff's free speech rights, the infringement was justified. And third, even if Jenkins unlawfully infringed Plaintiff's free speech rights, she is entitled to qualified immunity. The Court agrees that Plaintiff's allegations do not clear these hurdles.

In order to prevail on a claim of violation of the First Amendment by a public employee, a plaintiff must show: (1) he spoke on a matter of public, not private, concern; (2) the plaintiff spoke as a private citizen, not as a public employee; and (3) the plaintiff's protected speech was a "substantial or motivating factor" in the government's decision to take an adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1070-71 (9th Cir. 2009). If the plaintiff can demonstrate all of the above, the burden then shifts to the government to show that it had "an adequate justification for treating the employee differently from any other member of the general public" or, alternatively, that the plaintiff's protected speech was not a but-for cause of the adverse

3

employment action. *Id.* at 1071-72 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

### 1. Plaintiff Does Not Plausibly Allege He Was Prevented from Speaking as a Private Citizen on a Matter of Public Concern.

The parties conflate the issues of the topic of Plaintiff's speech and the capacity in which he spoke. For clarity, the Court will address each—and the applicable standards—in turn.

#### a. Plaintiff Does Not Articulate a Matter of Public Concern.

Whether speech involves a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Because of the variety of contexts in which protected speech may be made, there is no "general standard against which all such statements may be judged." *Connick*, 461 U.S. at 154 (quoting *Pickering v. Bd. of Ed. of Tp. High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 569 (1968)). The Court focuses "on the *point* of the speech, looking to such factors as the employee's motivation and the audience chosen for the speech." *Greisen*, 925 F.3d at 1109 (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)) (italics in original). "Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)) (internal marks omitted). "While discipline and morale in the workplace are related to an agency's efficient performance of its duties," speech relating thereto is not a matter of public concern if its purpose "is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with [one's] superiors." *Connick*, 461 U.S. at 148.

Jenkins provides two citations to authority which she contends support a finding that Plaintiff's speech was not of public concern, *Connick* and *Desrochers v. City of San Bernardino*, 572 F.3d 703, 707 (9th Cir. 2009). In *Connick*, the Supreme Court found that the plaintiff's speech regarding whether employees felt pressure to participate in political campaigns related to a public concern, but her speech which related to morale and trust in various supervisors did not. 461 U.S. at 148-49. Similarly, in *Desrochers*, the plaintiff officers contended that their speech

4

regarding lieutenants' leadership style and police department culture touched on a matter of public concern. 572 F.3d at 707. The Ninth Circuit held that the officers' complaints centered on a "personality dispute" and did not implicate the public's evaluation of the department's competence. *Id.* at 712. Jenkins argues that Plaintiff's speech, at bottom, likewise relates to his personal grievances as an employee rather than to a public concern.

Plaintiff contends that Jenkins "made the substance of [Plaintiff's] restricted speech a public issue" by maligning Plaintiff in public. (Dkt. No. 21, Opp., at 7.) Plaintiff contends that Defendant misreads *Connick* and *Desrochers* as creating a "*per se* exception to the First Amendments [sic] protections for what it characterizes as personnel disputes and grievances." (*Id.* at 8.) In the absence of a *per se* rule, according to Plaintiff, the Court should read the Complaint in the light most favorable to Plaintiff to find a question of public concern.

Plaintiff's position reflects a misunderstanding of his burden and the governing law. Although the Court must make all reasonable inferences in favor of Plaintiff at the motion to dismiss stage, Plaintiff must allege sufficient facts to make such inferences plausible.

According to the Complaint, Plaintiff was prevented from speech regarding:

> [1] the actions of defendant Jenkins in rejecting the decisions of former District Attorney Boudin to bring criminal charges against police officers alleged to have engaged in acts of excessive force against individuals in San Francisco; and [2] the public accusations made by defendant Jenkins against Boudin, Friedman, and others accusing them of dishonesty and violations of their legal and ethical responsibilities in bringing criminal charges against police officers and presenting evidence to a judge in San Francisco.

(Dkt. No. 1, Compl., ¶ 32.)

The first topic could theoretically, if pleaded with additional facts, relate to a question of public concern. Police conduct is a hotly debated issue in our time. Whether the District Attorney elects to prosecute police officers alleged to have acted with excessive force is of great public interest beyond individual personnel decisions. However, Plaintiff's grievance is much narrower: restricted speech regarding whether Jenkins should have followed Plaintiff's recommendation to prosecute Officer Samayoa. Considered in the context of Plaintiff's administrative leave pending investigation, Plaintiff does not allege sufficient facts to support an inference that "the point" of his infringed speech relates more to an issue of public concern than to Plaintiff's "attempt to turn

5

[his] displeasure into a cause celèbre." *See Greisen*, 925 F.3d at 1109; *Connick*, 461 U.S. at 148.

The second topic—Plaintiff's honesty and compliance with his legal and ethical responsibilities—likewise relates to an individual personnel dispute. Plaintiff complains that Jenkins impugned Plaintiff's character and did not give him the opportunity to respond. The only reasonable inference the Court may make from the Complaint was that Plaintiff's desired speech was about Plaintiff, not the public welfare. *See Griesen*, 925 F.3d at 1110 (finding plaintiff officer demonstrated his restricted speech was related to "[h]is interest in the welfare of the city" and his desire to expose wrongdoing and not merely his intent to stop an interpersonal power grab by defendant); *see also Roberts v. Springfield Util. Bd.*, 68 F.4th 470, 475 (9th Cir. 2023) (holding ongoing investigation into employee's alleged misconduct was not a matter of public concern).

Plaintiff's claims do not relate substantially to an issue of public concern, and so the Complaint is dismissed on this basis, with leave to amend.

    **b.**  **Plaintiff Does Not Allege Sufficient Facts to Indicate He Spoke as a Private Citizen.**

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Whether an employee speaks pursuant to his official duties requires a "practical inquiry" into "the scope of the employee's professional duties." *Id.* at 424. The inquiry involves a "mixed question of law and fact." *Barone v. City of Springfield*, 902 F.3d 1091, 1099 (9th Cir. 2018).

As pleaded, the allegations indicate Plaintiff's infringed speech primarily relate to his official duties in recommending charges against police officers. Plaintiff later sought to rebut Jenkins' comments that allegedly impugned Plaintiff's personal reputation, but again as relates to his job performance in conducting his official duties. Plaintiff does not allege facts to support a plausible inference that any such speech was made or would have been made outside of the context of his employment responsibilities. The motion to dismiss is granted on this basis as well, with leave to amend.

### 2. Jenkins Was Justified in Treating Plaintiff Differently than a Member of the General Public.

The right to freedom of expression is not absolute, particularly with regard to public employees. "A public employer 'may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large.' " *Roberts*, 68 F.4th at 474 (quoting *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465 (1995)). If a government employee speaks as a private citizen on a matter of public concern, the government may nevertheless restrict such speech if it has an "adequate justification" for doing so. *Id.* (quoting *Garcetti*, 547 U.S. at 418). The Court must balance the government's interest in restricting the expression against the plaintiff's First Amendment rights. *Eng.*, 552 F.3d at 1071 (citing *Pickering*, 391 U.S. at 568). "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418. "The more substantially an employee's speech involves matters of public concern, the weightier the government employer's interests must be in preventing disruption of the workplace or impairment of the employer's mission." *Hernandez v. City of Phoenix*, 43 F.4th 966, 977 (9th Cir. 2022)

Jenkins contends that she was justified in directing Plaintiff not to speak because he was a witness with access to privileged information regarding an ongoing investigation into the decision to prosecute Officer Samayoa. Plaintiff responds that Jenkins does not meet her burden to demonstrate that the balancing test weighs in Jenkins' favor. Unhelpfully, Plaintiff does not attempt to apply the balancing test to his Complaint.

Because the Court finds, above, that Plaintiff has failed to allege that his restricted speech involved matters of public concern, Jenkins needed to articulate only a minimal interest to justify the restriction on Plaintiffs' speech. Jenkins and the Office of the District Attorney have an interest in limiting speech by the subject of an internal investigation, as it relates to that investigation, in order to conduct the investigation without interference. *See Roberts*, 68 F.4th at 475 (finding that government entity was permitted to restrict speech relating to ongoing investigation). This interest outweighs Plaintiff's First Amendment interest in unencumbered speech regarding his professional conduct and Jenkins' decision to drop the charges against

7

Officer Samayoa.

The Court grants Jenkins' motion to dismiss on this additional basis, with leave to amend.

### 3. Jenkins May Be Entitled to Qualified Immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The privilege is an immunity from suit rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Therefore, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Here, Jenkins contends that Plaintiff fails to allege a violation of a clearly established right, and so Jenkins is entitled to qualified immunity. Plaintiff responds that the right to be free from prior restraints on employee speech is clearly established.

Because the Court grants Plaintiff leave to amend to cure his failure to plead that Jenkins violated his First Amendment rights, the Court defers ruling on the issue of qualified immunity at this time.

### C. The Court Dismisses Plaintiff's Section 1102.5 Claim Against Jenkins Because the Statute Does Not Provide for Individual Liability.

Jenkins next contends that Plaintiff cannot maintain a claim for retaliation under California Labor Code section 1102.5 against Jenkins personally, because that section does not provide for a cause of action against individuals. Plaintiff argues that amendments to Section 1102.5(b), effective in 2014, permit individual liability.

With the revision, the statute now reads: "An employer, *or any person acting on behalf of the employer*, shall not retaliate against an employee for disclosing information, . . . to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance. . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute. . . ." Cal. Lab. Code § 1102.5(b) (emphasis added). Plaintiff contends that

the "or any person" language provides, on its face, for individual liability, much like the "or any other person" in California Government Code section 12940(j)(1) permits individual liability for harassment.

No court has adopted this position in the decade since Section 1102.5 was amended. Instead, courts have almost uniformly applied two California Supreme Court decisions, *Reno v. Baird*, 18 Cal.4th 640 (1998) and *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal.4th 1158 (2008), to find that nonemployer individuals are not subject to personal liability for alleged retaliation against whistleblowers. *See Dawson v. Caregard Warranty Serv., Inc.*, No. 5:23-CV-01139-SB-SP, 2024 WL 661198, at *3 (C.D. Cal. Jan. 12, 2024) (surveying cases).

In *Reno*, the California Supreme Court held that individual liability was available for claims of harassment, but not for claims of discrimination under the California Fair Employment and Housing Act (the "FEHA"). 18 Cal.4th at 645. In distinguishing between harassment and discrimination, the court observed that harassment is not a necessary component of any job, and thus "[e]very supervisory employee can insulate himself or herself from claims of harassment by refraining from such conduct. An individual supervisory employee cannot, however, refrain from engaging in the type of conduct which could later give rise to a discrimination claim." *Id.* at 646. Hiring, firing, meting out assignments, and evaluating performance, for example, are all intrinsic to supervision and yet could be found discriminatory based upon the supervisor's motivations. *Id.* at 646-47. Examining the text, the California Supreme Court found that the prohibition of discrimination by "any person acting as an agent of an employer" did not create liability for individual supervisory employees. *Id.* at 645.

In *Jones*, the California Supreme Court addressed retaliation claims under the FEHA. 42 Cal.4th at 1160. The FEHA makes it unlawful for "any employer, labor organization, employment agency, or person" to retaliate. *Id.* at 1162. Like Plaintiff here, the plaintiff in *Jones* argued that the "or person" language in the FEHA encompassed individual supervisors. *Id.* The California Supreme Court rejected this argument. First, the court pointed out that Section 12940(j)(3) expressly states that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment" by that employee. *Id.* No such clear language was present

9

in the retaliation subdivision. *Id.* The court then borrowed extensively from its opinion in *Reno*, finding that:

> All of these reasons for not imposing individual liability for discrimination—supervisors can avoid harassment but cannot avoid personnel decisions, it is incongruous to exempt small employers but to hold individual nonemployers liable, sound policy favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision—apply equally to retaliation. Indeed, some may apply even more forcefully to retaliation claims. If an employee gains a reputation as a complainer, supervisors might be particularly afraid to impose discipline on that employee or make other lawful personnel decisions out of fear the employee might claim the action was retaliation for the complaining.

*Id.* at 1167.

Plaintiff has not articulated any persuasive reasons why the California Supreme Court's rationale would apply to retaliation claims under the FEHA but not under the Labor Code. Section 1102.5 does not contain clear language to impose personal liability on supervisors akin to the harassment prohibition in Section 12940(j) of the FEHA. Decisions by individuals to hire, fire, promote, discipline, or investigate employees are intrinsic to the supervisory role and capable of later giving rise to claims of retaliation, much like the discrimination claim at issue in *Reno*.

In the absence of argument or authority to the contrary, this Court joins the growing number of District Courts to predict that the California Supreme Court would not permit Section 1102.5 claims to proceed against nonemployer individuals. *See, e.g.*, *Dawson*, 2024 WL 661198, at *6; *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 608 (N.D. Cal. 2022); *Rosas v. NFI Indus.*, No. 221CV00046WBSCKD, 2021 WL 1264921, at *5 (E.D. Cal. Apr. 6, 2021); *Crone v. Tracy Unified Sch. Dist.*, No. 2:20-CV-01451-JAM-AC, 2020 WL 7182345, at *2 (E.D. Cal. Dec. 7, 2020); *Tillery v. Lollis*, No. 1:14-CV-02025-KJM, 2015 WL 4873111, at *9–10 (E.D. Cal. Aug. 13, 2015).

Because Plaintiff has no cause of action against Jenkins individually, the Court does not reach Jenkins' argument that she is immune from liability under California Government Code section 820.2.

Further amendment would be futile given that Plaintiff has no right of action against Jenkins under Section 1102.5. Plaintiff's Section 1102.5 claim as to Jenkins is therefore dismissed

10

with prejudice.

**D.     The Court Denies as Moot Jenkins' Motion to Strike.**

Jenkins argues that Plaintiff's punitive damages request should be stricken under Federal Rule of Civil Procedure 12(f) because Plaintiff does not allege sufficient facts to support an inference that Jenkins acted with malice, oppression, or reckless disregard of Plaintiff's rights. Plaintiff responds that, read as a whole, the Complaint contains sufficient allegations to support such an inference.

The Complaint contains the following allegations regarding Jenkins' conduct:

1. Jenkins exercised her prosecutorial discretion to drop the charges against Officer Samayoa, (Compl., ¶ 23);
2. Jenkins publicly announced the decision to drop the charges, stating that "[i]t appears that the case was filed for political reasons and not in the interests of justice. . . Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with this prosecution." (*Id.* ¶ 26);
3. Jenkins was aware of Plaintiff's position that Investigator Lundberg was coerced to provide false testimony regarding the Samayoa case, (*id.* ¶ 21); and
4. Jenkins placed Plaintiff on administrative leave pending an investigation into his conduct and ordered Plaintiff not to speak about the Samayoa case or the circumstances of Plaintiff's leave, (*id.* ¶ 25).

These allegations do not support an inference that Jenkins acted with malice or oppression toward Plaintiff, or with reckless disregard of Plaintiff's rights. Jenkins did not name Plaintiff or state with particularity that Plaintiff engaged in misconduct in the statement alleged by Plaintiff. It is unclear how Jenkins' decision to not pursue charges against Officer Samayoa—or her public explanation for that decision—constitute conduct directed toward Plaintiff at all.

Plaintiff takes particular offense to his suspension, characterizing the taking of his badge and gun as "degrading." (Opp. at 16.) However, the Complaint contains very few facts regarding the circumstances of or motivation for Jenkins' decision to place Plaintiff on administrative leave.

11

Plaintiff also does not allege that taking one's badge and gun, or the other consequences of his suspension, were out of the ordinary for a suspended officer.

Because the Court grants Plaintiff an opportunity to amend his Section 1983 claim for violation of his First Amendment rights, Jenkins' motion to strike is denied as moot. However, should Plaintiff renew his request for punitive damages against Jenkins, he will need to plead more than a conclusory allegation that Jenkins acted with malice, oppression, or reckless disregard of his rights.

## CONCLUSION

For the foregoing reasons, Defendant District Attorney Brooke Jenkins' Motion to Dismiss is GRANTED. As against Jenkins, Plaintiff's Section 1983 claim is dismissed WITHOUT PREJUDICE and his Section 1102.5 claim is dismissed WITH PREJUDICE. Jenkins' Motion to Strike is DENIED AS MOOT.

Plaintiff may file an amended complaint within twenty-one (21) days of this Order.

The Court HEREBY ORDERS the parties to appear for an Initial Case Management Conference on Friday, May 31, 2024, at 11:00 a.m. The parties shall submit their Joint Case Management Statement no later than May 24, 2024, in accordance with this Court's Civil Standing Orders and the "Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement."

**IT IS SO ORDERED.**

Dated: March 19, 2024

JEFFREY S. WHITE
United States District Judge