UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK ARNE FRIEDMAN,<br><br>Plaintiff,<br><br>v.<br><br>BROOKE JENKINS, et al.,<br><br>Defendants. | Case No. 23-cv-05036-JSW<br><br>**ORDER GRANTING DEFENDANT BROOKE JENKINS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

Now before the Court for consideration is the motion to dismiss the First Amended Complaint filed by Defendant Brooke Jenkins ("Jenkins"). The Court has considered the parties' papers and relevant legal authority, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The hearing set for May 31, 2024, at 9:00 a.m. is HEREBY VACATED. For the following reasons, the Court GRANTS the motion to dismiss, with leave to amend.

**BACKGROUND**

Plaintiff Jack Arne Friedman ("Plaintiff") was previously employed as an Investigator in the Independent Investigations Bureau within the Office of the San Francisco District Attorney. (First Am. Compl. ("FAC"), ¶¶ 4, 12.) The Independent Investigations Bureau investigated officer-involved shootings to determine whether criminal charges should be filed. (*Id.* ¶ 12.)

In November 2020, former San Francisco District Attorney Chesa Boudin asked Plaintiff to prepare an affidavit in support of a request to issue a warrant for the arrest of Officer Samayoa for the shooting death of a carjacking suspect. (*Id.* ¶ 13.) Plaintiff did so, and his affidavit demonstrated probable cause for Samayoa's arrest. (*Id.* ¶ 14.) Boudin charged Samayoa with voluntary and involuntary manslaughter, excessive force, and assault with a firearm, marking the

first time a San Francisco police officer was charged with criminal homicide. (*Id.* ¶¶ 15-16.) The charges generated significant interest by the media and the public. (*Id.* ¶ 16.)

In the summer of 2022, voters recalled Boudin as District Attorney. (*Id.* ¶ 17.) San Francisco Mayor London Breed appointed Defendant Jenkins as the interim District Attorney, and voters elected Jenkins to a full term in the position in November 2022. (*Id.*)

Jenkins and unnamed members of her staff decided to drop the charges against Samayoa. (*Id.* ¶ 20.) Jenkins and the unnamed staff members claimed that the warrant obtained by Plaintiff was legally deficient and the result of misconduct. (*Id.*) They also claimed that Plaintiff believed that he lacked probable cause for the warrant and that he violated his responsibility to include exculpatory evidence in his affidavit. (*Id.*)

Members of Jenkins' staff directed Investigator Daniel Lundberg to document his opinions regarding the decision to charge Samayoa. (*Id.* ¶ 22.) On December 1, 2022, after Plaintiff learned of Lundberg's memorandum, he told Jenkins that he believed that efforts to undermine the warrant were improper. (*Id.* at 25.) Plaintiff defended his work and maintained that he had properly demonstrated probable cause for Samayoa's arrest. (*Id.*) He further told Jenkins that he believed Lundberg was being unlawfully coerced to provide false testimony and to violate policies against disclosing work product. (*Id.* ¶ 26.) Plaintiff repeated his concerns to Jenkins on December 8, 2022, January 24, 2023, and March 7, 2023. (*Id.* ¶ 28.)

On January 30, 2023, Jenkins placed Plaintiff on administrative leave. (*Id.* ¶ 33.) Jenkins forbade Plaintiff from speaking about the facts and circumstances of the decision to drop the charges against Samayoa and the actions taken against Plaintiff. (*Id.*)

Jenkins used her prosecutorial discretion to drop the charges against Samayoa. (*Id.* ¶ 29.) Deputy District Attorney Darby Williams told the California Superior Court judge overseeing Samayoa's case that Plaintiff had expressed reservations about the validity of the arrest warrant. (*Id.*) Jenkins publicly blamed Plaintiff for misconduct in preparing the warrant. (*Id.* ¶ 30.) On February 8, 2023, Jenkins stated: "[i]t appears that the case was filed for political reasons and not in the interests of justice. . . Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with

this prosecution." (*Id.* ¶ 37.) Plaintiff did not respond despite media inquiries about Jenkins' statement, due to Jenkins' order prohibiting Plaintiff from speaking. (*Id.* ¶ 38.)

Jenkins terminated Plaintiff's employment in May 2023. (*Id.* ¶ 39.)

Plaintiff initiated this action in October 2023 against Jenkins and the City and County of San Francisco. (Dkt. No. 1.) Plaintiff alleged that Defendants violated 28 U.S.C. section 1983 by infringing Plaintiff's First Amendment right to free speech while acting under color of state law. (*See id.* at 7.) Plaintiff also sought punitive damages from Jenkins for acting with malice and oppression. (*Id.* at 7-8.)

Jenkins moved to dismiss Plaintiff's original Complaint and to strike Plaintiff's claim for punitive damages. (Dkt. No. 17.) The Court granted the motion, finding that Plaintiff failed to state a claim under 28 U.S.C. section 1983 for infringement of his First Amendment right to free speech because (1) Plaintiff did not articulate a matter of public concern; (2) Plaintiff did not allege sufficient facts to indicate he spoke as a private citizen; and (3) based on Plaintiff's allegations, Jenkins was justified in treating Plaintiff differently than a member of the general public. (Dkt. No. 25, at 3-7.) The Court declined to address whether Jenkins was entitled to qualified immunity for the challenged conduct.[1] (*Id.* at 8.) The Court denied Jenkins' motion to strike as moot, but it noted that the Complaint did not allege facts supporting an inference that Jenkins acted with malice or oppression. (*Id.* at 11.)

Plaintiff filed an amended complaint (the "FAC") alleging additional details and reasserting his Section 1983 claim against Jenkins for violation of his First Amendment rights. Jenkins again moves to dismiss and to strike.

The issue before the Court is whether Plaintiff has alleged sufficient facts to cure all of the pleading defects in his original Complaint. The Court finds that Plaintiff has not.

---

[1] The Court also dismissed Plaintiff's California Labor Code section 1102.5 claim against Jenkins. (Dkt. No. 25, at 8.) In the FAC, Plaintiff brings a Section 1102.5 claim against Defendant City and County of San Francisco, but not against Jenkins. (*See* FAC, at 9.)

**ANALYSIS**

**A.     Applicable Legal Standard.**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[l]abels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

**B.     The Court Dismisses Plaintiff's Section 1983 Claim Against Jenkins.**

Jenkins renews her arguments that Plaintiff's Section 1983 claim for infringement of his First Amendment right to free speech should be dismissed for (1) failure to plead sufficient facts to show that he was prevented from speaking as a private citizen on a matter of public concern; (2) even if Jenkins infringed Plaintiff's free speech rights, the infringement was justified; and (3) even if Jenkins unlawfully infringed Plaintiff's free speech rights, she is entitled to qualified immunity. The Court finds that the FAC clears the first of these hurdles, but that the alleged infringement of Plaintiff's First Amendment rights was justified.

**1.     Plaintiff's Speech Involved a Matter of Public Concern.**

As this Court described in its previous order:

> Whether speech involves a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) (quoting *Connick v. Myers*, 461 U.S. 138,

4

147-48 (1983)). Because of the variety of contexts in which protected speech may be made, there is no "general standard against which all such statements may be judged." *Connick*, 461 U.S. at 154 (quoting *Pickering v. Bd. of Ed. of Tp. High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 569 (1968)). The Court focuses "on the *point* of the speech, looking to such factors as the employee's motivation and the audience chosen for the speech." *Greisen*, 925 F.3d at 1109 (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)) (italics in original). "Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)) (internal marks omitted). "While discipline and morale in the workplace are related to an agency's efficient performance of its duties," speech relating thereto is not a matter of public concern if its purpose "is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with [one's] superiors." *Connick*, 461 U.S. at 148.

(Dkt. No. 25, at 4.)

Plaintiff alleges that Jenkins restricted Plaintiff's First Amendment right to speak regarding:

> [1] the actions of defendant Jenkins in rejecting the decisions of former District Attorney Boudin to bring criminal charges against police officers alleged to have engaged in acts of excessive force against individuals in San Francisco; and [2] the public accusations made by defendant Jenkins against Boudin, Friedman, and others accusing them of dishonesty and violations of their legal and ethical responsibilities in presenting evidence to a judge and bringing criminal charges against police officers accused of using excessive force against members of the public.

(FAC ¶ 46.) As Jenkins points out, this language is nearly identical to the language from the original Complaint, which this Court ruled did not relate to matters of public interest. (Compl., ¶ 32; Dkt. No. 25, at 5 (observing that "[t]he first topic could theoretically. . . relate to a question of public concern" but that "Plaintiff's grievance is much narrower: restricted speech regarding whether Jenkins should have followed Plaintiff's recommendation to prosecute Officer Samayoa.").)

Plaintiff urges the Court not to consider Paragraph 46 of the FAC in isolation. Characterizing the FAC as a whole, Plaintiff claims he was restricted from speaking on "the issues that the District Attorney, motivated by reversing her predecessor's actions without incurring criticism, was attempting to drop the first ever criminal homicide charges of a police officer in a manner that was deliberately deceptive, and in violation of the criminal law and the policies of the District Attorney's office." (Dkt. No. 29, Opp., at 3-4.) Taking all reasonable inferences in favor of Plaintiff, the Court agrees.

5

Plaintiff cites two cases for the proposition that personnel complaints regarding others can be matters of public concern: *Robinson v. York*, 566 F.3d 817 (9th Cir. 2009) and *Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004). In *Robinson*, the plaintiff police officer alleged he was denied a promotion in retaliation for speaking out about officer misconduct and testifying in a class action lawsuit regarding systematic corruption and discrimination. 566 F.3d at 820-21. The Ninth Circuit observed that, "[a]s a matter of law, 'the competency of the police force is surely a matter of great public concern.'" *Id.* at 822 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). The plaintiff's extensive reporting and testimony did not relate to his own job status but instead the conduct of the force as a whole; the speech thus implicated matters of public concern. *Id.* at 823. In *Thomas*, the plaintiff employee contended her First Amendment rights were violated when she was terminated in retaliation for speech supporting the promotion of another employee, who was Black. 379 F.3d at 807-08. The Ninth Circuit noted that "the type of personnel matters that we have deemed unprotected under the public concern test are employment grievances in which the employee is complaining about her *own* job treatment, not personnel matters pertaining to others." *Id.* at 808. Because the plaintiff's speech did not relate to her own job status but instead to "[u]nlawful conduct by a government employee or illegal activity within a government agency," it could be protected as a matter of public concern. *Id.* at 808-09.

Here, as Jenkins points out, Plaintiff's suppressed speech differs from that of the plaintiffs in *Robinson* and *Thomas* because it related (at least in part) to his own job status and performance. However, the FAC adds allegations that Officer Samayoa was the first San Francisco police officer to be charged with homicide. (FAC ¶ 16.) Plaintiff alleges that Jenkins sought to curtail Plaintiff's speech and publicly blame him for the decision to drop the Samayoa prosecution in an effort to discourage all San Francisco police investigators from recommending or pursuing charges against San Francisco Police Department officers. (*Id.* ¶ 41.) Such an effort would implicate the public interest. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (holding that "reporting police abuse and the attempts to suppress its disclosure. . . is quintessentially a matter of public concern."). Although the FAC, like the original Complaint, implies Plaintiff is largely concerned with his own reputation, the Court may make a reasonable inference that the ultimate

6

"point" of Plaintiff's desired speech was to expose efforts to sweep police misconduct under the rug.[2]  *See Greisen*, 925 F.3d at 1109 (holding courts should focus on "point" of suppressed speech in determining whether it involves matters of public concern).

### 2. Plaintiff Spoke as a Private Citizen.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.  Whether an employee speaks pursuant to his official duties requires a "practical inquiry" into "the scope of the employee's professional duties." *Id.* at 424.  This inquiry involves a "mixed question of law and fact." *Barone v. City of Springfield*, 902 F.3d 1091, 1099 (9th Cir. 2018).  "Precisely because of the fact-intensive nature of the inquiry, no single formulation of factors can encompass the full set of inquiries relevant to determining the scope of a plaintiff's job duties." *Dahlia*, 735 F.3d at 1074.  Courts have nevertheless provided a few factors to aid in the inquiry:

First, the Court may look to the subject matter.  It is "nondispositive" that the restricted speech "concerned the subject matter of [Plaintiff's] employment," because "[t]he First Amendment protects some expressions related to the speaker's job." *Garcetti*, 547 U.S. at 421.  When the subject matter concerns a particular incident and is prepared as part of a routine report, it is less likely that an employee speaks as a citizen. *Dahlia*, 735 F.3d at 1075.  If the subject matter is instead "broad concerns about corruption or systemic abuse," then it is more likely that the employee speaks as a citizen. *Id.*

Second, when a law enforcement employee "communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Dahlia*, 735 F.3d at 1074.  Accordingly, when an employee complains internally up the chain of command, it is likely that an employee is speaking in the course of his job duties, but when an

---

[2] The Court is not convinced that Jenkins "transformed" Plaintiff's desired speech into a matter of public concern by issuing her own statement on the matter.  Plaintiff's argument is devoid of any citation to case law.  Moreover, Plaintiff's fixation on Jenkins' alleged (but unspecified) comments regarding Plaintiff's conduct suggests that Plaintiff was concerned with his own reputation rather than the public interest.

employee communicates externally, he speaks as a citizen. *Id.*

Third, an employee is more likely to speak as a citizen when he speaks "in direct contravention to his supervisor's orders." *Id.* at 1075. When considering the employee's job duties via "practical inquiry," it matters "what [the employee] was actually told to do" rather than his listed job duties. *Id.* at 1076. Thus, if an employee is told to not speak, speaking cannot be part of his job duties.

Turning to the case at hand, and considering the FAC in the light most favorable to Plaintiff, these factors weigh in favor of finding that Plaintiff's abridged speech was in his capacity as a private citizen.

The first factor, subject matter, relates to Plaintiff's employment and job duties: investigating police conduct and preparing affidavits in support of warrants for officer arrests. (*See* FAC ¶¶ 12, 33.) Indeed, Plaintiff's desired speech relates directly to work conducted by Plaintiff in preparing the affidavit in support for the arrest of Officer Samayoa. (*Id.* ¶ 33.) Plaintiff nevertheless contends that the efforts to undermine his affidavit and to quash his speech were part of a broader effort to chill prosecutions of police officers. (*Id.* ¶ 41.) Although it is a close call, viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff's speech relates to systemic, not merely isolated, practices. This factor thus cuts both ways and does not reveal the capacity in which Plaintiff sought to speak.

The second factor, audience, weighs in favor of finding that Plaintiff sought to speak as a citizen. Plaintiff sought to respond to media inquiries and to address the public at large. (*Id.* ¶ 38.) The media and public were not in Plaintiff's chain of command; addressing them regarding the District Attorney's charging decisions was not part of Plaintiff's job duties. (*Id.* ¶ 35.)

The third factor, speaking against orders, also weighs in favor of finding Plaintiff's desired speech was not part of his job duties. Jenkins ordered Plaintiff not to speak regarding Officer Samayoa or the investigation into Plaintiff. Therefore, any prospective speech on those topics would have been outside of his job duties. However, given that any prior restraint on a plaintiff's speech in the employment context would necessarily be an order from a supervisor or other person with authority over the plaintiff's employment, the Court gives this factor minimal weight.

Considering these factors together, the Court finds, by a narrow margin, that Plaintiff has sufficiently pleaded that his intended speech would have been made in his capacity as a citizen rather than in his capacity as a public employee.

### 3. Jenkins Was Justified in Treating Plaintiff Differently Than a Member of the General Public.

Having found that Plaintiff's restricted speech involved Plaintiff speaking as a citizen on a matter of public concern, the Court now turns to the *Pickering* balancing test. *Pickering v. Bd. Of Ed.*, 391 U.S. 563, 568 (1968). Under the *Pickering* test, the Court weighs the Plaintiff's interest in expression against the government's interest in "promoting workplace efficiency and avoiding workplace disruption." *Hufford v. McEnaney*, 249 F.3d 1142, 1149 (9th Cir. 2001) (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 238 F.3d 1132, 1136 (9th Cir. 2001), *superseded and amended on other grounds in* 265 F.3d 741 (9th Cir. 2001)).

"A public employer 'may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large.'" *Roberts v. Springfield Utility Bd.*, 68 F.4th 470, 474 (9th Cir. 2023) (quoting *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465 (1995)). If a government employee speaks as a private citizen on a matter of public concern, the government may nevertheless restrict such speech if it has an "adequate justification" for doing so. *Id.* (quoting *Garcetti*, 547 U.S. at 418). Employers do not have "a legitimate interest in silencing reports of corruption or potential illegality," even if those reports would disrupt harmony or efficiency in the workplace. *Hufford*, 249 F.3d at 1149. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419.

Jenkins provides two reasons why she was justified in treating Plaintiff differently than members of the public: (1) the gag order predated the public announcement that Jenkins was dropping charges against Officer Samayoa, meaning that any speech would have related to an ongoing criminal investigation and thus undermined the operations of the SFDA and Jenkins' exercise of her discretion; and (2) public employers are permitted to direct employees not to

9

discuss matters subject to a pending internal investigation, as was the case here. Plaintiff contends that the interests provided by Jenkins are outweighed by Plaintiff's interest in unencumbered speech on a matter of public concern. The Court finds both of Jenkins' reasons persuasive.

Jenkins' interest in suppressing speech that could undermine ongoing investigations and charging decisions outweighs Plaintiff's interest in commenting on the same. Plaintiff alleges in the FAC that Jenkins dismissed the charges against Officer Samayoa through an exercise of Jenkin's prosecutorial discretion. (FAC ¶ 29.) Any speech that Plaintiff would have made between January 30, when the gag order was implemented, and February 8, when Jenkins announced her decision, would necessarily have undermined or impeded Jenkins' discretion to make charging decisions in the course of her duties as District Attorney. Plaintiff contends, vaguely, that his abridged speech would have exposed corruption in the workplace, but a District Attorney has a legitimate interest in curtailing public statements regarding charging decisions from officers who seek to cast doubt as to their use of discretion. Prosecutorial discretion is absolute. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit").

In the period of time after Jenkins made her charging statement and before Plaintiff was discharged, Plaintiff was under internal investigation relating to the Plaintiff's prior investigation into Officer Samayoa. (FAC ¶¶ 33, 39.) Jenkins and her office have an interest in limiting speech by the subject of an internal investigation, as it relates to that investigation, in order to conduct the investigation without interference. *See Roberts*, 68 F.4th at 475 (finding that government entity was permitted to restrict speech relating to ongoing investigation). Here, the investigation in question centered on Plaintiff's own conduct regarding the Officer Samayoa affidavit. Plaintiff's prospective public statements on the same topic—which he contends was a matter of great public interest and debate—logically would have interfered with that investigation. Moreover, speech relating to the ongoing investigation would be likely to include confidential or privileged work product information possessed by Plaintiff by virtue of his position. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 867-68 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999) (listing confidentiality required by working relationship as one factor to consider in *Pickering*

10

analysis).

Plaintiff cites *Huffard v. McEnaney* for the proposition that the public interest advanced by his restricted speech would have outweighed any ensuing potential disruptions to the workplace or to the investigation. *See* 249 F.3d 1142 (9th Cir. 2001). There, the Ninth Circuit held, "in a whistleblowing context the presence or absence of disruption is not entitled to the same weight as it is in a *Pickering* analysis where the employee's speech involves mere criticism of the visions or policies of management." *Id.* at 1149. Here, crucially, Plaintiff does not allege that he is a whistleblower. Instead, he sought to speak out in disagreement with Jenkins' policy vision regarding police officers—the policy for which Jenkins may well have been appointed in the first place. (*See* FAC ¶¶ 18, 42.)

The Court finds that Plaintiff has not plausibly alleged that he should have been treated as a member of the general public, and it dismisses the FAC on this basis, with leave to amend.

### 4. Jenkins May Be Entitled to Qualified Immunity.

In determining whether qualified immunity applies to an employer in the First Amendment context, the Court considers whether the employee's First Amendment rights were clearly established at the time of the conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, the *Pickering* analysis must "so clearly favor [the plaintiff] that it would have been patently unreasonable for [the defendant] to conclude that the First Amendment did not protect [the plaintiff's] speech." *Gilbrook*, 177 F.3d at 867 (quoting *Brewster v. Bd. of Educ.*, 149 F.3d 971, 980 (9th Cir. 1998)).

Given the Court's *Pickering* analysis, above, Jenkins may be entitled to qualified immunity. However, because the Court grants Plaintiff leave to amend the FAC, it defers ruling on the issue of qualified immunity at this time.

### C. The Court Denies as Moot Jenkins' Motion to Strike.

Jenkins again argues that Plaintiff's punitive damages request should be stricken under Federal Rule of Civil Procedure 12(f) because Plaintiff does not allege sufficient facts to support an inference that Jenkins acted with malice, oppression, or reckless disregard of Plaintiff's rights. Plaintiff responds that, read as a whole, the FAC contains sufficient allegations to support such an

11

inference.

The Court again finds that Plaintiff's allegations of malice and oppression are conclusory and implausible. Plaintiff did not address the issues noted in the Court's previous order, except to add allegations regarding his professional background and the importance of his reputation to his career. These allegations do not relate to *Jenkins'* supposed malice or oppression.

Because the Court grants Plaintiff an opportunity to amend, Jenkins' motion to strike is denied as moot. However, the Court again cautions Plaintiff that a renewed request for punitive damages against Jenkins will require more than a conclusory allegation that Jenkins acted with malice, oppression, or reckless disregard of his rights.

**CONCLUSION**

For the foregoing reasons, Defendant District Attorney Brooke Jenkins' Motion to Dismiss is GRANTED. Jenkins' Motion to Strike is DENIED AS MOOT.

Plaintiff may file an amended complaint within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: May 29, 2024

JEFFREY S. WHITE
United States District Judge