DAN SIEGEL, SBN 56400
ALAN S. YEE, SBN 91444
SARA BELADI, SBN 348987
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com
Email: alanyee@siegelyee.com
Email: sbeladi@protonmail.com

*Attorneys for Plaintiff*
JACK ARNE FRIEDMAN

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACK ARNE FRIEDMAN,<br><br>Plaintiff,<br><br>v.<br><br>BROOKE JENKINS, District Attorney, City and County of San Francisco; and CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | Case No. 23-cv-05036-JSW<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br>Civil Rights<br><br>Demand for Jury Trial |

Plaintiff JACK ARNE FRIEDMAN complains against defendants BROOKE JENKINS and CITY AND COUNTY OF SAN FRANCISCO as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff JACK ARNE FRIEDMAN is a former Assistant Chief of Investigations ("Lieutenant") with the office of the San Francisco District Attorney. San Francisco District Attorney BROOKE JENKINS imposed an unconstitutional restraint on FRIEDMAN'S free speech

rights and then terminated his employment on May 5, 2023, because of his opposition to the actions she took in violation of state law and local policy to justify her decision to drop criminal charges against San Francisco Police officer Christopher Samayoa. Jenkins falsely and publicly blamed her decision to drop the charges against Samayoa on plaintiff Friedman, former San Francisco District Attorney Chesa Boudin, and others, claiming that the charges were politically motivated and not legally justified, and that Friedman had lied when he attempted to respond to her accusations.

**JURISDICTION**

2. This action arises under the First Amendment to the United States Constitution, to redress a prior restraint on protected speech. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 (cases arising under the Constitution and laws of the United States), 28 U.S.C. § 1343 (actions to recover damages under an Act of Congress providing for the protection of civil rights), and 42 U.S.C. § 1983 (actions to recover damages for the deprivation of any Constitutional right).

3. The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

**VENUE**

4. Venue is proper in the Northern District of California because the events or omissions giving rise to this case occurred in the City and County of San Francisco in this District, and the principal place of business of the defendants is San Francisco.

**PARTIES**

5. Plaintiff JACK ARNE FRIEDMAN was employed by defendants JENKINS and CITY AND COUNTY OF SAN FRANCISCO as an investigator in the office of the San Francisco District Attorney until May 5, 2023.

6. Defendant BROOKE JENKINS was at all times relevant hereto the District Attorney for the City and County of San Francisco.

7. Defendant CITY AND COUNTY OF SAN FRANCISCO (CCSF) is a public entity, duly organized and existing under the laws of the State of California. The office of the San Francisco District Attorney is an agency operated under the authority of the City and County of San Francisco.

## STATEMENT OF FACTS

8. Plaintiff JACK ARNE FRIEDMAN received his B.A. degree from Pomona College in 1989 and his law degree from the University of Chicago Law School in 1993. He has been a member of the State Bar of California since 1998.

9. Plaintiff Friedman was a sworn police officer with the City of Berkeley Police Department from December 2000 to June 2017. He retired from the Berkeley Police Department with the rank of Sergeant.

10. Plaintiff Friedman is an attorney licensed in California and a former law clerk to a United States District Judge. He has also taught a law school course on police uses of force.

11. In his law enforcement career, Friedman has written dozens of probable cause warrant affidavits which he presented to judge(s) who issued warrants thereupon.

12. Plaintiff Friedman joined the Office of the San Francisco District Attorney, Independent Investigations Bureau, as an Investigator in June 2017. The purpose of the bureau was to investigate officer-involved shootings to determine whether criminal charges should be filed.

13. On or about November 14, 2020, then San Francisco District Attorney Chesa Boudin asked Investigator Friedman to prepare an affidavit in support of a request to issue a warrant for the arrest of Officer Samayoa for the shooting death of Keita O'Neil, a carjacking suspect, on December 1, 2017.

14. Investigator Friedman properly prepared the request and affidavit for an arrest warrant. As required by law, his affidavit demonstrated probable cause for the arrest of Officer Samayoa, and a Superior Court judge signed the arrest warrant on November 21, 2020.

15. Then District Attorney Boudin brought criminal charges against Samayoa. On information and belief, Boudin's decision to charge Samayoa was based on several factors,

including the interests of justice and Boudin's good faith belief he could convince a jury that the evidence would prove Samayoa's guilt beyond a reasonable doubt. The criminal charges against Officer Samayoa included voluntary and involuntary manslaughter, excessive force, and assault with a firearm.

16. The charges against Samayoa represented the first time that a San Francisco police officer was charged with criminal homicide. The filing of the charges against Samayoa created tremendous public interest by the media and strong expressions of public interest from both those who supported and those who opposed the charges.

17. On July 7, 2022, San Francisco Mayor London Breed appointed Brooke Jenkins as the interim San Francisco District Attorney, following the voter recall of Chesa Boudin. Brooke Jenkins was elected as District Attorney on November 8, 2022.

18. Even before and simultaneous with Jenkins' appointment, some members of the public and some officials and members of the San Francisco Police Department expressed to Jenkins both publicly and privately their opposition to the criminal charges brought against Samayoa and other San Francisco police officers by Boudin, as well as their criticisms of Boudin and members of his staff, including plaintiff Friedman, involved in the bringing of these criminal charges. Discussion of the charges and of Jenkins' anticipated actions regarding them were matters of intense public interest in San Francisco and throughout the Bay Area.

19. Soon after her appointment, Brooke Jenkins began efforts to reverse former District Attorney Boudin's actions to hold police officers accountable for unlawful violence against members of the public.

20. District Attorney Jenkins and members of her staff decided to drop the charges against Officer Samayoa for the shooting death of Keita O'Neil. Rather than simply announce that District Attorney Jenkins had decided to exercise her discretion to dismiss the case, and thereby incur criticism from members of O'Neil's family and the public for doing so, Jenkins and her staff falsely claimed that the legally sufficient arrest warrant that then Investigator Friedman had obtained for the arrest of Officer Samayoa was legally deficient and the result of misconduct. They wrongly claimed that former District Attorney Boudin had decided to prosecute Samayoa for

improper political reasons and improperly persuaded Investigator Friedman to prepare the affidavit and warrant request. They also falsely alleged that Investigator Friedman believed that probable cause was lacking for the warrant and had violated his responsibility to include evidence exculpatory of Officer Samayoa in the affidavit he prepared to obtain the arrest warrant.

21. At around the time of Jenkins' appointment, in an effort to undermine the prosecution of Officer Samayoa, some members of the Police Department and of the District Attorney's office began an effort to discredit Friedman by circulating documents alleging that he had engaged in misconduct in connection with his employment by the Office of the District Attorney.

22. Members of District Attorney Jenkins' staff directed District Attorney Investigator Daniel Lundberg to document his opinions regarding the decision to charge Officer Samayoa in an effort to justify her decision to drop the charges. Lundberg was reluctant to write such a memorandum.

23. On information and belief, Investigator Lundberg understood that the memorandum he was asked to prepare would undermine the prosecution of Officer Samayoa.

24. On information and belief, although Investigator Lundberg did not agree with the decision to charge Officer Samayoa, he did agree that Investigator Friedman had documented probable cause for Officer Samayoa's arrest. On December 1, 2022, after Friedman learned of the efforts to undermine the warrant that he had prepared, he personally advised District Attorney Jenkins of his concerns that these efforts were improper and would compromise the integrity of the Office of the San Francisco District Attorney and the criminal justice system. Friedman defended his work and maintained that he had properly demonstrated the probable cause required for Officer Samoya's arrest.

25. Speaking as a whistleblower, plaintiff Friedman also told District Attorney Jenkins that he believed that Investigator Lundberg was being unlawfully coerced to provide false testimony regarding the Samayoa case and to violate the San Francisco District Attorney’s policies against disclosing work product. Investigator Friedman reasonably believed that the efforts to undermine the warrant that he had obtained would violate Penal Code §§ 118 and 134,

as well as the policies and procedures of the San Francisco District Attorney.

26. Friedman reported to Jenkins his concerns that the integrity of the District Attorney's office and the criminal justice system were being compromised by this conduct. He communicated to Jenkins that his concern was not her using her discretion to dismiss the Samayoa case but rather her office's improper and unlawful manufacture of evidence and pressuring of witnesses to attack the warrant.

27. District Attorney Jenkins told plaintiff Friedman that she had not read Friedman's affidavit or the warrant, was in the process of going through the evidence, and had not decided whether she was going to continue the prosecution of the case.

28. On or about December 5, 2022, Friedman again blew the whistle and sent Jenkins an email reiterating his concerns about the detrimental effect manufacturing evidence and pressuring witnesses would have on the integrity of the SFDA's office and the criminal justice system.

29. On or about December 2022, January 24, 2023, and again on March 7, 2023, Lieutenant Friedman reported the concerns of illegal conduct he had shared with District Attorney Jenkins during a meeting and in email communications with District Attorney Jenkins and investigators in District Attorney Jenkins' office. Plaintiff Friedman's concerns were borne out when District Attorney Jenkins utilized her discretion to dismiss the criminal charges against Officer Samayoa and justified her decision to do so by accusing Friedman of misconduct and "lack of good faith," when she knew that was not the case. In addition, Deputy District Attorney Darby Williams falsely advised the Superior Court judge overseeing the Samayoa case that Lieutenant Friedman had expressed reservations about the validity of the arrest warrant.

30. Jenkins publicly announced her decision to dismiss the Samayoa charges on January 27, 2023, after her office had concluded its investigation of the shooting for which Samayoa was initially charged and of the validity of the affidavit and other documents and statements supporting the charges against Samayoa.

31. District Attorney Jenkins publicly and gratuitously blamed plaintiff Friedman for alleged misconduct in preparing an inadequate arrest warrant, made untrue, public statements

about him, and terminated his employment for allegedly lying during her office's investigation of the process that led to the issuance of the warrant.

32. At no point has District Attorney Jenkins denied that the evidence in the case supported a finding of probable cause to arrest Samayoa.

33. District Attorney Jenkins' decision to dismiss the criminal charges against Samayoa and her public condemnation of Boudin and Friedman in an effort to justify her decision to drop the charges were both matters of intense public and media interest in San Francisco and the surrounding area.

34. In December 2022, District Attorney Jenkins placed plaintiff Friedman under internal investigation, directed him to be interviewed by a member of her executive staff, and forbade him from speaking about the Samayoa prosecution or the fact he was under internal investigation. Plaintiff Friedman asked the executive staff member and the head of Human Resources for the San Francisco District Attorney's Office to notify him of the alleged misconduct of which he was being accused, as required under the California Public Safety Officers Procedural Bill of Rights Act, Cal. Gov't Code § 3303(c).

35. On January 30, 2023, District Attorney Jenkins ordered that be placed on administrative leave. Members of her staff took plaintiff's badge and gun, suspended his police powers, banned him from the Office of the District Attorney, cut off his work email, telephone, and computer files, and imposed a gag order on him, forbidding him to speak about the facts and circumstances of the decision to drop the charges against Officer Samayoa and the action taken against plaintiff. Defendant Jenkins threatened to discipline plaintiff Friedman if he violated her gag order.

36. Friedman's duties as an investigator with the Office of the District Attorney did not include addressing the public on the actions of the District Attorney in bringing or dismissing criminal charges or the reasons for such actions.

37. A week after imposing the gag order on plaintiff Friedman, Jenkins publicly discussed, in great detail, the matters on which she had restrained Friedman's speech. Her statements included an extensive discussion of the evidence, analysis of the criminal laws

applicable to the case, her decision and alleged reasons for dropping the charges against Officer Samayoa, the actions taken against plaintiff Friedman, her version of the December 1, 2022, meeting with Friedman that allegedly precipitated her decision to launch an internal investigation and caused her to conclude that the case was filed for improper reasons.

38. On February 8, 2023, in support of her decision to drop the charges against Officer Samoya, District Attorney Jenkins publicly stated that “[i]t appears that the case was filed for political reasons and not in the interests of justice... Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with this prosecution.” District Attorney Jenkins' statement was false, wrongly accused plaintiff Friedman of dishonesty and violating his legal obligations under state law and CCSF policies and was itself an act of wrongful interference in the administration of the criminal laws of California. As a result of the gag order that the District Attorney imposed on plaintiff Friedman, he was unable to respond to the public accusations that she made against him, despite the intense public and media interest and inquiries to plaintiff Friedman about these issues.

39. On February 8, 2023, Friedman received an email from a *San Francisco Chronicle* reporter who was covering the Samayoa case. The reporter wrote, “I’ve heard what the DA’s office and the defense are saying about your conduct. But I very much want to know what you have to say about it.” While Jenkins’ office was distributing false information to reporters, despite Jenkins’ assertions to Friedman that any discussion of the “matter” would jeopardize internal agency functions, Friedman was unable to counter or comment upon the information that was funneled to the reporter.

40. In a March 7, 2023, email to Chief Administrative, Financial Officer and Head of Human Relations Eugene Clendinen, Friedman again blew the whistle on possible illegal conduct by Jenkins, Darby Williams, and others in Jenkins’ office. Plaintiff Friedman reported that these public officials may have violated a number of statutes, laws, and policies, which he identified, by taking certain actions.

41. As a result of plaintiff Friedman's efforts to carry out his lawful responsibilities

under the laws and policies applicable to the Office of the San Francisco District Attorney and his disclosures to District Attorney Jenkins of actions and intended actions that he reasonably believed would violate provisions of the California Penal Code and policies of the San Francisco District Attorney, District Attorney Jenkins and members of her staff (1) placed plaintiff Friedman on leave and subjected him to a gag order; (2) subjected him to false accusations regarding the alleged dereliction of his duties as the Investigator preparing the warrant for the arrest of Officer Samayoa; (3) subjected him to false public statements in violation of Civil Code § 46 regarding his unfitness to perform the responsibilities of his position; (4) falsely accused him of lying during the District Attorney's investigation of the circumstances leading to the arrest of Officer Samayoa; and (5) terminated him from his position as Assistant Chief of Investigations for the Office of the San Francisco District Attorney on May 5, 2023.

42. The prior restraint imposed on Friedman by Jenkins between January 27, 2023 and his firing on May 5, 2023, was overbroad and restricted speech that did not serve legitimate governmental interests.

43. Jenkins' justification for the gag order was not justified by any legitimate law enforcement or governmental interest and was imposed upon Friedman in order to interfere with his whistleblowing.

44. As Friedman pointed out to Jenkins on more than one occasion, Jenkins' office did not follow statutory requirements or its own personnel policies regarding investigations, such as apprising Friedman of his wrongdoing under the Public Safety Officers Procedural Bill of Rights.

45. At the time of her imposition of the gag order, Jenkins could not have had a legitimate concern that Friedman's speech would compromise the investigation or prosecution of the Samayoa case because, as she made clear in her January 27, 2023 announcement of the dismissal of the criminal case against Samayoa, there was not to be any further criminal prosecution or investigation of Samayoa.

46. Jenkins could not have had a legitimate concern that Friedman's whistleblowing speech would compromise any investigation of his actions, because she and her office were publicly speaking on this matter, and her statements would have been more likely than

Friedman's to influence any witnesses, given her position as their employer.

47. The gag order imposed on Friedman by Jenkins was overbroad as to both duration and scope because (1) it prohibited him from speaking about Jenkins' and her staff's actions even after her decision to dismiss the charges against Samayoa, and therefore could not have had any effect on the investigation or prosecution of those charges; and (2) it forbade him from addressing the policy implications of Jenkins' refusal to prosecute police officers involved in excessive force against members of the public and her dishonesty in attempting to justify her actions, as well as the investigations of Samayoa and of himself.

48. By terminating Friedman's employment and making him a public scapegoat for her refusal to hold police officers accountable for using excessive force against members of the public, Jenkins intended to and did deter other District Attorney investigators and employees in her office from pursuing meritorious charges against San Francisco Police Department officers and other law enforcement officers, even when their conduct is criminal and the evidence supports bringing charges.

49. The District Attorney's decisions and actions in this case were motivated by her desire to appease certain members of the public, the San Francisco Police Department, and the police officers' union rather than an objective review of the evidence and the public interest.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

50. On June 8, 2023, plaintiff filed a Government Claim with the City and County of San Francisco regarding the matters set forth herein.

51. On July 20, 2023, the City and County of San Francisco denied plaintiff's claim.

**FIRST CLAIM FOR RELIEF – VIOLATION OF THE FIRST AMENDMENT**
**42 U.S.C. § 1983**
**(Against Defendant Jenkins)**

52. Plaintiff Friedman refers to and incorporates by reference the paragraphs above as though fully set forth herein.

53. By virtue of the foregoing, defendant Jenkins imposed a prior restraint on the right of plaintiff Friedman to speak publicly as a private citizen on matters of intense public concern, including but not limited to the actions of defendant Jenkins in rejecting the decisions of former

District Attorney Boudin to bring criminal charges against police officers alleged to have engaged in acts of excessive force against individuals in San Francisco; and the public accusations made by defendant Jenkins against Boudin, Friedman, and others accusing them of dishonesty and violations of their legal and ethical responsibilities in presenting evidence to a judge and bringing criminal charges against police officers in San Francisco, in order to justify her decisions to drop charges against police officers accused of using excessive force against members of the public.

54. The prior restraint placed by Jenkins on Friedman's speech prevented him from addressing non-confidential, non-privileged matters already in the public sphere, including the dismissal of the criminal charges against Samayoa and Jenkins' public accusations against Boudin and Friedman, among others.

**SECOND CLAIM FOR RELIEF – RETALIATION FOR MAKING PROTECTED DISCLOSURES**
**(California Labor Code § 1102.5)**
**(Against Defendant City and County of San Francisco)**

55. Plaintiff Friedman refers to and incorporates by reference the paragraphs above as though fully set forth herein.

56. As a sworn peace officer and investigator with the Office of the San Francisco District Attorney, plaintiff Friedman was required to comply with the provisions of the California Penal Code and applicable rules of the City and County of San Francisco and San Francisco District Attorney policies governing the activities of the San Francisco District Attorney, including but not limited to policies regarding the presentation of evidence to a magistrate, arrest standards, the SFDA Policy: Charging Decisions and Police Accountability, and the Memorandum of Understanding between the San Francisco District Attorney and the San Francisco Police Department.

57. By virtue of the foregoing, defendants Jenkins and City and County of San Francisco retaliated against plaintiff Friedman because (1) he attempted to fulfill his responsibilities under law and policy by preparing and presenting to a magistrate and the District Attorney, the affidavit for the arrest of Officer Samayoa; (2) he brought to the attention of District Attorney Jenkins and members of her staff his concerns that they were engaging in potential violations of law and policy

when they took actions to undermine the legal sufficiency of the affidavit for Officer Samayoa's arrest and made false allegations regarding the actions of plaintiff Friedman in preparing that affidavit and the actions of former District Attorney Boudin in initiating the prosecution of Officer Samayoa; and (3) he refused to participate in what he reasonably believed were unlawful and unethical actions.

**DAMAGES**

58. As a direct and proximate cause of defendants' actions, JACK ARNE FRIEDMAN was harmed and suffered damages as follows:

(a) He suffered physical and emotional distress and will suffer such physical and emotional distress in the future;

(b) He has suffered extreme harm to his reputation as an attorney and sworn peace officer by being publicly accused of misconduct and dishonesty in the course of his official duties, thus rendering him unable to obtain employment as a police officer;

(c) He incurred damages in the form of expenses for medical and mental health care and will incur such expenses in the future;

(d) He suffered damages in the form of lost compensation and will suffer such damages in the future.

**PUNITIVE DAMAGES**

59. The aforementioned conduct by defendant BROOKE JENKINS was malicious and oppressive and was done in conscious disregard of the likelihood that the conduct would result in harm to plaintiff FRIEDMAN. This conduct was so contemptible that it would be looked down upon and despised by ordinary, decent people. Therefore, plaintiff JACK ARNE FRIEDMAN is entitled to recover punitive damages against defendant BROOKE JENKINS.

**INJUNCTIVE RELIEF**

60. Plaintiff FRIEDMAN has no plain, speedy, or adequate remedy at law to redress the harms alleged in this action, and therefore asks this Court to issue appropriate injunctions to redress the harms to his reputation occasioned by the acts of defendants herein by clearing plaintiff's name and personnel records.

**PRAYER FOR RELIEF**

61. WHEREFORE, plaintiff JACK ARNE FRIEDMAN prays for judgment against defendants BROOKE JENKINS and CITY AND COUNTY OF SAN FRANCISO as follows:

(1) General damages for emotional and physical distress, loss of reputation, pain, and suffering, in an amount to be determined;

(2) Compensatory damages for past and future lost wages, and benefits, and loss of earning capacity, in an amount to be determined;

(3) Compensatory damages for past and future medical and mental health care, in an amount to be determined;

(4) Punitive damages in an amount to be determined;

(5) Injunctive relief;

(6) Interest at the legal rate;

(7) Attorneys' fees;

(8) Costs of the suit; and

(9) Such other and further relief as the Court may deem proper.

Dated: June 20, 2024

SIEGEL, YEE, BRUNNER & MEHTA

By: ______________________________
Dan Siegel

Attorneys for Plaintiff
JACK ARNE FRIEDMAN