UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK ARNE FRIEDMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BROOKE JENKINS, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-05036-JSW<br><br>**ORDER DENYING DEFENDANT BROOKE JENKINS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; DENYING MOTION TO STRIKE**<br><br>Re: Dkt. No. 39 |

Now before the Court is the motion to dismiss the Second Amended Complaint ("SAC") and motion to strike Plaintiff's request for punitive damages filed by Defendant Brooke Jenkins. The Court has reviewed the parties' papers, the record in this case, and relevant legal authority, and it finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). For the following reasons, the Court DENIES the motion.

## BACKGROUND

**A.　Allegations in the SAC.**

Plaintiff Jack Arne Friedman ("Plaintiff") was terminated from his employment as an Investigator in the Independent Investigations Bureau within the Office of the San Francisco District Attorney following the recall of former District Attorney Chesa Boudin. (Dkt. No. 38, SAC ¶¶ 1, 12.) Before the recall, Plaintiff had prepared an affidavit in support of a warrant for an officer's arrest in connection with the shooting death of a carjacking suspect. (*Id.* ¶¶ 13-14.) The officer, Samayoa, was the first San Francisco police officer to be charged with criminal homicide. (*Id.* ¶ 16.)

After assuming the office, the current District Attorney, Jenkins, revisited Boudin's charging decision. (*Id.* ¶ 20.) Jenkins placed Plaintiff under internal investigation, directed him to

be interviewed by a member of her executive staff, and forbade him from speaking about the Samayoa charging decision or the fact that Plaintiff was under internal investigation. (*Id.* ¶ 34.)

In an additional effort to undermine the Samayoa warrant, members of Jenkins' staff directed Investigator Daniel Lundberg to document his opinions regarding the decision to charge Samayoa in a memorandum. (*Id.* ¶¶ 22-23.) When Plaintiff learned of Lundberg's memorandum, he told Jenkins he believed Lundberg was unlawfully coerced to provide false testimony and to violate policies against disclosing work product. (*Id.* ¶ 25.) Plaintiff believed that Lundberg's memorandum would violate California law, specifically Penal Code sections 118 and 134. (*Id.*) Plaintiff repeated his concerns to Jenkins on December 5, 2022, January 24, 2023, and March 7, 2023. (*Id.* ¶¶ 28, 29.)

Jenkins announced her decision to drop the charges against Samayoa on January 27, 2023. (*Id.* ¶ 30.) Jenkins and unnamed staff members stated publicly that Plaintiff obtained a legally deficient warrant as the result of misconduct. (*Id.* ¶ 20.) Jenkins and her staff also stated that Boudin improperly persuaded Plaintiff to prepare the affidavit and warrant request, and that Plaintiff violated his responsibility to include exculpatory evidence in his affidavit. (*Id.*) Plaintiff alleges Jenkins used him as a "public scapegoat" to deflect criticism of her decision not to charge Samayoa and to deter others from investigating police misconduct. (*Id.* ¶ 48.)Three days after publicly announcing the decision to drop charges against Samayoa, Jenkins placed Plaintiff on administrative leave and again forbade Plaintiff from speaking about the charging decision and the internal administrative actions taken against Plaintiff. (*Id.* ¶ 30.) Despite directing Plaintiff not to speak about the situation, Jenkins stated publicly: "It appears that the case was filed for political reasons and not in the interests of justice . . . Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with this prosecution." (*Id.* ¶ 38.)

That same day, Plaintiff received an email from a *San Francisco Chronicle* reporter which said: "I've heard what the DA's office and the defense are saying about your conduct. But I very much want to know what you have to say about it." (*Id.* ¶ 39.) Plaintiff did not respond to the reporter's inquiry due to Jenkins' instruction that he not speak. (*Id.*)

1    On March 7, 2023, Plaintiff emailed the "Chief Administrative, Financial Officer and Head
2    of Human Relations." (*Id*. ¶ 40.) Plaintiff "reported that [Jenkins and others] may have violated a
3    number of statutes, laws, and policies, which he identified, by taking certain actions." (*Id*.)
4    Jenkins terminated Plaintiff's employment on May 5, 2023. (*Id.* ¶ 41.)

**B.    Procedural History.**

Plaintiff initiated this action in October 2023 against Jenkins and the City and County of San Francisco. (Dkt. No. 1.) Plaintiff alleged that Jenkins violated 28 U.S.C. section 1983 by infringing Plaintiff's First Amendment right to free speech while acting under color of state law. (*See id*. at 7.) Plaintiff also sought punitive damages from Jenkins for acting with malice and oppression. (*Id*. at 7-8.)

Jenkins twice moved to dismiss and to strike Plaintiff's claim for punitive damages. (Dkt. Nos. 17, 27.) The Court granted the motions with leave to amend. In its previous Order, the Court found that Plaintiff had (1) articulated a matter of public concern; and (2) alleged sufficient facts to indicate he spoke as a private citizen; but (3) as pleaded, Jenkins was justified in treating Plaintiff differently than a member of the general public. (Dkt. No. 36, May 2024 Order, at 4.) The Court declined to address whether Jenkins is entitled to qualified immunity for the challenged conduct. It further denied Jenkins' motion to strike as moot, but noted the FAC did not allege facts supporting an inference that Jenkins acted with malice. (*Id*. at 11-12.)

Plaintiff filed the SAC on June 20, 2024. (Dkt. No. 38.) Jenkins moved to dismiss for a third time. (Dkt. No. 39.) The issues before the Court are (1) whether Plaintiff has alleged sufficient facts to cure the pleading defects in the FAC and survive Jenkins' motions to dismiss and to strike; and (2) whether Jenkins is entitled to qualified immunity for the challenged conduct.

**ANALYSIS**

**A. Applicable Legal Standard.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

3

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[l]abels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a district court accepts as true all well-pleaded material facts and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

**B.     Plaintiff Alleges a Plausible First Amendment Violation.**

Jenkins again contends that Plaintiff has not identified First Amendment rights that she infringed. She asserts that Plaintiff's whistleblower allegations are conclusory and that her interests in limiting Plaintiff's speech on matters of prosecutorial discretion and internal investigations justified treating Plaintiff differently than a member of the general public.

**1.     Plaintiff Pleads a Strong Interest in Free Expression.**

"[P]ublic employees have First Amendment rights to speak out on matters of public interest and concern, so long as the speech does not interfere with the legitimate and orderly administration of government operations." *Ohlson v. Brady*, 9 F.4th 1156, 1157-58 (9th Cir. 2021) (citing cases). Courts use the *Pickering* test to weigh a public employee's interest in commenting on matters of public concern against the state's interest in effective and efficient public service. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Under the *Pickering* test, if a plaintiff can show he spoke as a private citizen on a matter of public concern, the burden shifts to the government to show that it had "an adequate justification for treating the employee differently from any other member of the general public." *Eng v. Cooley*, 552 F.3d 1062, 1070-71 (9th Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Public employers generally cannot "silenc[e] reports of corruption or potential illegality," even if those reports would disrupt harmony or efficiency in the workplace. *Hufford v. McEnaney*, 249 F.3d 1142, 1149 (9th Cir. 2001). "Government employee speech that exposes wrongdoing or corruption within the employee's own agency lies at 'the apex of the First Amendment[.]' "

4

*Hernandez v. City of Phoenix*, 43 F.4th 966, 979 (9th Cir. 2022) (quoting *Moser v. Las Vegas Metro. Police Dept.*, 984 F.3d 900, 906 (9th Cir. 2021)). "[W]here the [plaintiff's] speech involve[s] unlawful activities rather than policy differences," the government's workplace disruption "hurdle" is higher. *Keyser v. Sacramento Sch. Dist.*, 265 F.3d 741, 758 n.2 (9th Cir. 2001). "[T]he public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere potential disturbance to the workplace." *Id.* at 747-48.

In the SAC, Plaintiff pleads that he sought to speak publicly about violations of specific laws, that he did in fact due so internally, and that he was prevented from further speech to the public. Jenkins argues that Plaintiff's allegations that he sought to speak publicly as a whistleblower are conclusory.

The SAC is at times conclusory: Plaintiff, for example, alleges he reported to an HR officer that Jenkins "may have violated a number of statutes, laws, and policies." (SAC ¶ 40.) Plaintiff does not elaborate further or provide the content of that communication.

However, the SAC provides sufficient detail elsewhere. Plaintiff alleges that he informed Jenkins that coercing Lundberg's testimony would violate at least two state laws, Penal Code sections 118 and 134. (SAC ¶ 25.) This speech directly relates to alleged unlawful conduct by Jenkins, her staff, and Lundberg. An allegation of government wrongdoing "lies at the apex of the First Amendment[.]" *Hernandez*, 43 F.4th at 979. Therefore, Plaintiff's allegation that he sought to disclose the unlawful coercion of Lundberg's testimony gives rise to a strong interest in free expression.

Jenkins counters that the SAC as a whole shows that Plaintiff merely wanted to criticize Jenkins' policy vision and defend Plaintiff's own reputation. *See Huffard*, 249 F.3d at 1149 (holding that "mere criticisms of the visions or policies of management" receive less weight, in a *Pickering* balancing test, than speech relating to misconduct). Jenkins also argues that Plaintiff's failure to "blow the whistle" before the January 30, 2023 gag order suggests that Plaintiff's real interest was not exposing government misconduct, but instead protecting his own reputation.

As this Court has noted, Plaintiff certainly alleges reputational harm and criticizes Jenkins'

5

exercise of her prosecutorial discretion. For example, Plaintiff pleads that Jenkins "forbade him from addressing the policy implications of Jenkins' refusal to prosecute police officers." (SAC ¶ 47.) Jenkins also argues that the San Francisco Chronicle reporter's question provided Plaintiff with an opportunity to speak *only* about Plaintiff's own reputation, as the reporter asked about "your [Plaintiff's] conduct." (*Id.* ¶ 39.) A reader could find that Plaintiff's grievance was an inability to defend his own reputation. However, drawing reasonable inferences in Plaintiff's favor, a reader could find that the reporter's contact presented an opportunity to disclose misconduct within Jenkins' office by presenting Plaintiff's version of events.

Therefore, the SAC as a whole indicates that "the ultimate 'point' of Plaintiff's desired speech was to expose efforts to sweep police misconduct under the rug." (May 2023 Order, at 6:27-7:2.) Plaintiff has strengthened his pleadings since the Court made this finding: Plaintiff now alleges that he spoke internally about conduct he believed violated the law and that he was prevented from speaking about it to the public, including after being asked to speak by a reporter. Jenkins' arguments require drawing an inference in favor of Jenkins, which the Court may not do.

**2.      The Court Cannot Conduct the Pickering Test Without a Factual Record.**

Finally, Jenkins argues that her interests in limiting Plaintiff's speech on matters of prosecutorial discretion and on Plaintiff's own internal investigation justified treating Plaintiff differently than a member of the general public.

Courts often afford considerable deference to a police department's determination that an officer's speech warrants discipline, but courts generally refrain from making such determinations at this stage of litigation if the complaint adequately alleges the plaintiff has a protected interest in speaking. *See Robinson v. York*, 566 F.3d 81, 825 (9th Cir. 2009) (holding that even the summary judgment stage was too early to conclude that defendant's interest in avoiding workplace disruption outweighed plaintiff's free speech interests under *Pickering*). Indeed, the Ninth Circuit has described the *Pickering* test as a "fact-sensitive, context-specific balancing." *Riley's Am. Heritage Farms v. Esasser*, 32 F.4th 707, 729 (9th Cir. 2022).

In *Hernandez*, the Ninth Circuit held that even when a plaintiff's protected expression is "low value" speech, courts are still required to investigate whether the government has shown an

6

1  adequate justification for punishing that otherwise protected speech. *Hernandez*, 43 F.4th at 979.
2  In that case, the plaintiff posted "distasteful" messages to Facebook expressing hostility toward
3  racial and religious minorities. *Id.* at 978. The court found that it could not investigate the
4  adequacy of the government's justification for its suppression because the district court had
5  prematurely dismissed the case on a motion to dismiss. *Id.* at 979.

6  Here, Plaintiff has pled a stronger interest in free expression than the plaintiff in
7  *Hernandez*. Although the government here alleged potential workplace disruption resulting
8  Plaintiff's speech, Plaintiff's allegations of government misconduct indicate much stronger First
9  Amendment interests than the distasteful social media posts about racial and religious minorities
10 in *Hernandez*. *Id.* at 979. The Court, therefore, cannot assess the government's justification
11 against Plaintiff's interest in free expression without a factual record. The Court finds that
12 Plaintiff has pled a sufficient interest in free expression such that application of the *Pickering* test
13 at the pleading stage is inappropriate.

14 In sum, the Court finds that the well-pleaded allegations in the SAC plausibly give rise to a
15 cause of action for violation of Plaintiff's First Amendment right to free speech.

**C.     The Court Requires a Factual Record to Determine Whether Jenkins Is Entitled to Qualified Immunity.**

18 Whether a public employee "enjoyed a clearly established right to speak" depends on
19 "whether the outcome of the *Pickering* balancing test so clearly favored [the plaintiff] that it
20 would have been patently unreasonable for the [government] to conclude that the First
21 Amendment did not protect his speech." *Riley's Am. Heritage Farms*, 32 F.4th at 729 (quoting
22 *Brewster v. Bd. of Educ. of Lywood Unified Sch. Dist.*, 149 F.3d 971, 980 (9th Cir. 1998)). Here,
23 the Court is unable to conduct a *Pickering* test—on which the qualified immunity analysis
24 depends—without a factual record.

25 Both parties cite rely on cases on qualified immunity for section 1983 claims which were
26 resolved at the summary judgment stage of litigation. Defendant principally relies on *Ohlson v.*
27 *Brady*, in which the Ninth Circuit held that a forensic lab scientist's First Amendment rights were
28 not clearly established when he advocated for full release of blood batches of blood alcohol tests

against his supervisors' orders. 9 F.4th 1156, 1166 (9th Cir. 2021). Plaintiff principally relies on *Moonin v. Tice,* in which the Ninth Circuit held that a police department's policy prohibiting discussion of the department's K9 program violated the plaintiff's, a police officer in the department, clearly established rights. 868 F.3d 853, 858 (9th Cir. 2017). In both cases, the courts evaluated the government's specific prohibition on speech, the government's anticipated or actual interest in workplace disruption, and the plaintiff's context-dependent free speech interest, with the full benefit of a factual record. In other words, the courts conducted what the Ninth Circuit elsewhere described as the *Pickering* test's "fact-sensitive, context-specific balancing." *Riley's Am. Heritage Farms*, 32 F.4th at 729.

Here, too, the Court requires a factual record to determine whether the *Pickering* test so clearly favors the government that Jenkins would be entitled qualified immunity. The Court cannot determine whether Jenkins is entitled to qualified immunity based upon the pleadings. *See Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1177-1178 (E.D. Cal. 2005) (denying police officers' qualified immunity defense at motion to dismiss stage when Plaintiff alleges retaliation for whistleblowing).

**D.    The Court Denies Jenkins' Motion to Strike Punitive Damages.**

Jenkins argues the Court should strike Plaintiff's claim for punitive damages under Rule 12(f) because Plaintiff fails to plead facts giving rise to a plausible allegation that Jenkins acted with oppression, fraud, or malice toward plaintiff. Jenkins also argues that Plaintiff's punitive damages claim is largely conclusory and duplicative of his previous complaints. Plaintiff counters that his new allegations "are sufficient to show that [Jenkins] acted with the intention to injure [Plaintiff] or with reckless disregard to his rights, or in other words, that [Jenkins] acted with malice, oppression, and the reckless disregard of plaintiff's rights." (Dkt No. 43, Opp., at 10:15-17.)

Punitive damages may be awarded in a Section 1983 suit "when [the] defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Ninth Circuit defines "reckless or callous indifference" as "the conscious choice to

8

disregard the consequences of one's acts or omissions." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 670 (9th Cir. 2015).

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b). Rule 9(b) applies to pleadings which require malice or other "conditions of a person's mind," including the mental conditions required for punitive damages. *See, e.g.*, *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015) (finding that punitive damages may be alleged generally under Rule 9(b)). A plaintiff who has adequately pled his claim need only include "a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Leung v. Fed. Deposit Ins. Corp.*, No. 24-cv-00337-BLF, 2024 WL 3588015, at *9 (N.D. Cal. Jul. 29, 2024) (quoting *Alejandro v. St Micro Elecs., Inc*, 129 F. Supp 3d 898, 918 (N.D. Cal. 2015)); *but see Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (rejecting conclusory allegations of malice because they did not meet the pleading standards of *Twombly* and *Iqbal*).

Here, Plaintiff's prayer for punitive damages in the SAC remains conclusory. However, construing all inferences in favor of Plaintiff, the SAC as a whole plausibly gives rise to an inference that Jenkins acted with "reckless or callous indifference" to Plaintiff's constitutional rights by forbidding him to speak after he reported wrongdoing. *Castro*, 797 F.3d at 670.

Jenkins' motion to strike is therefore denied. The Court takes no position on the ultimate availability of punitive damages.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Jenkins' motion to dismiss and motion to strike punitive damages.

**IT IS SO ORDERED.**

Dated: December 4, 2024

_____
JEFFREY S. WHITE
United States District Judge