`

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACK ARNE FRIEDMAN,

Plaintiff,

v.

BROOKE JENKINS, et al.,

Defendants.

Case No. 23-cv-05036-JSW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR LEAVE TO SUPPLEMENT OPPOSITION**

Re: Dkt. Nos. 61, 106

Now before the Court is the motion for summary judgment filed by Defendants Brooke Jenkins and the City and County of San Francisco ("Defendants"). The Court has considered the parties' papers and relevant legal authority, and the record in this case, and HEREBY GRANTS IN PART AND DENIES IN PART the motion for summary judgment.[1]

**BACKGROUND**

Plaintiff Jack Arne Friedman ("Plaintiff") was previously employed by the Office of the San Francisco District Attorney, Independent Investigations Bureau. (Dkt. No. 26, First Amended Complaint ("FAC") at ¶¶ 1, 12.) In that role, Plaintiff investigated officer-involved shootings and recommended whether criminal charges should be filed against officers. (*Id.* at ¶ 12.)

On November 14, 2020, then San Francisco District Attorney Chesa Boudin asked Plaintiff

[1] After submission of his opposition, Plaintiff moved the Court for leave to supplement the record to include a recently issued Peace Officer Standards and Training Commission decision regarding Plaintiff. The decision is evidence of an investigative finding by the governmental agency that oversees peace officers' conduct finding that there was no dishonesty or misconduct by Plaintiff. The Court finds good cause to examine the document and GRANTS Plaintiff leave to file it.

United States District Court
Northern District of California

to prepare an affidavit in support of a request to issue a warrant for the arrest of Officer Samayoa for the shooting death of Keita O'Neil, a carjacking suspect, on December 1, 2027. (*Id.* at ¶ 13.) Plaintiff prepared the affidavit for an arrest, and a Superior Court judge signed the arrest warrant based on a finding of probable cause. (*Id.* at ¶ 14.) Former District Attorney Boudin then brought criminal charges against Officer Samayoa. (*Id.* at ¶ 15.)

San Francisco voters subsequently recalled Boudin, and Defendant Brooke Jenkins was appointed to serve as District Attorney. (*Id.* at ¶ 17.) As District Attorney, Jenkins began to reverse the earlier decision to press charges against Officer Samayoa. (*Id.* at ¶ 19.) Members of Jenkins' staff directed District Attorney Investigator Daniel Lundberg to document his opinions regarding the decision to charge the officer. (*Id.* at ¶ 22.) Plaintiff alleges that he feared that Inspector Lundberg's memorandum would seek to undermine Plaintiff's affidavit and that Plaintiff would be blamed for the dismissal of charges. (*Id.* at ¶¶ 23-25.) Plaintiff communicated his concern to Jenkins and defended his earlier work, maintaining that he had properly demonstrated the probable cause necessary for Officer Samayoa's arrest. (*Id.* at ¶ 25.) Plaintiff also told Jenkins that he believed that Inspector Lundberg was being unlawfully coerced to provide false testimony regarding the Samayoa case and to violate San Francisco District Attorney's policies against disclosing work product. (*Id.* at ¶ 26.)

District Attorney Jenkins exercised her discretion to dismiss the criminal charges against Officer Samayoa, "justifying her decision to do so by accusing [Plaintiff] of misconduct and lack of good faith." (*Id.* at ¶ 29.) Plaintiff alleges that Jenkins "publicly and gratuitously blamed" him for "alleged misconduct in preparing an inadequate arrest warrant, made untrue, public statements about him, and terminated his employment for allegedly lying during her office's investigation of the process that led to the issuance of the warrant." (*Id.* at ¶ 30.) On January 30, 2023, Jenkins ordered that Plaintiff be placed on administrative leave and imposed a gag order on him, forbidding him to speak about the facts and circumstances of the decision to drop the charges against Officer Samayoa and the action taken against Plaintiff, and threatened to discipline him if he violated her gag order. (*Id.* at ¶ 33.)

On February 8, 2023, Jenkins decided to drop the charges and, in an announcement

United States District Court
Northern District of California

accompanying her decision, she publicly stated that "[i]t appears that the case was filed for political reasons and not in the interests of justice … Given the conflicts that have arisen, the evidentiary problems, and the complete lack of good faith surrounding the filing of this matter, we cannot ethically proceed with this prosecution." (*Id.* at ¶ 37.) Plaintiff alleges that as a result of the gag order imposed on him, he was unable to respond to public accusations that Jenkins made against him, "despite the intense public and media interest and inquiries to" Plaintiff. (*Id.* at ¶ 38.)

On October 2, 2023, Plaintiff filed this action against Jenkins and the City and County of San Francisco alleging that Jenkins's conduct (1) violated his First Amendment right to freedom of speech in violation of 28 U.S.C. Section 1983, and (2) constituted retaliation for making protected disclosures in violation of California Labor Code Section 1102.5. After an order granting a preliminary motion to dismiss, Plaintiff filed an amended complaint. Defendants move for summary judgment on both counts.

## ANALYSIS

### A. Legal Standard on Motion for Summary Judgment.

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not

have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or shows that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B. First Amendment Claim Under Section 1983.**

Although citizens "do not surrender their First Amendment rights by accepting public employment," nevertheless, the government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Lane v. Franks*, 573 U.S. 228, 231 (2014); *Pickering v. Board of Ed.*, 391 U.S. 563, 568 (1968). "Government employers, similar to private employers, 'need a significant degree of control over their employees' words and actions.'" *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1102 (9th Cir. 2018) (quoting *Lane*, 573 U.S. at 236). "Thus, the government, in some instances, 'may impost restraints on the job-related speech of public employees that would plainly be unconstitutional if applied to the public at large.'" *Id.* (citing *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465 (1995)).

The Court in *Pickering* prescribed a two-step approach for evaluating these competing interests. First, the Court determines whether the restriction affects a government employee's speech "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see Pickering*, 391 U.S. at 568. If it does, we inquire "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of

the general public." *Id.* This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations. *Id.*

Here, Plaintiff's First Amendment claim fails because although arguably Plaintiff's prohibited speech would have been a matter of public concern, the limited speech restrictions were imposed during the pendency of an internal investigation into Plaintiff's conduct in connection with the arrest warrant for Officer Samayoa. In curtailing Plaintiff's speech, Jenkins had legitimate interests in preventing interference with prosecutorial discretion and conducting internal investigations. Public employers have a legitimate interest in instructing their employees not to make statements that would interfere in "a workplace misconduct investigation during the pendency of that investigation." *Roberts v. Springfield Utility Bd.*, 68 F.4th 470, 475 (2023). In addition, the Samayoa prosecution was pending at the time of the alleged gag order. Thus, any public statements Plaintiff could have made about those proceedings would potentially undermine the mission and operations of the District Attorney's Office. "[A] District Attorney has a legitimate interest in curtailing public statements regarding charging decision from officers who seek to case doubt as to their use of discretion. Prosecutorial discretion is absolute." *Friedman v. Jenkins*, No. 23-CV-05036-JSW, 2024 WL 2750021, at *6 (N.D. Cal. May 29, 2024) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit")); *see also Garcetti*, 547 U.S. at 417 (when concluding that particular speech was protected, the Court noted that it was significant that the speech did not interfere with the regular operations of the workplace). "Moreover, speech relating to the ongoing investigation would be likely to include confidential or privileged work product information possessed by Plaintiff by virtue of his position." *Id.* (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 867-68 (9th Cir. 1999) (listing confidentiality required by working relationship as one factor in the *Pickering* analysis)).

The Court finds that the brief curtailment of Plaintiff's free speech while a potential witness to the Samayoa prosecution was a justified limitation of his constitutional rights and was

based upon legitimate reasons to treat Plaintiff differently from any other member of the public. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the first cause of action for violation of the First Amendment right to freedom of speech in violation of 28 U.S.C. Section 1983.

**C. Whistleblower Retaliation Claim.**

Plaintiff alleges a second cause of action for violation of California Labor Code Section 1102.5 for retaliation for making protected disclosures. To prevail on a retaliation claim, Plaintiff must establish by a preponderance of the evidence that his protected complaints were a "contributing factor" in the City's decision to initiate an investigation, put him on paid administrative leave, and eventually to terminate him. *See* Cal. Labor Code § 1102.6. Defendants argue that even if Plaintiff could meet this burden, they can establish by clear and convincing evidence that Jenkins would have made the same adverse employment decisions even in the absence of the protected complaints. Here, Jenkins testified that she terminated Plaintiff because he was dishonest in investigatory interviews and that his ability to function as an investigator was negatively affected by his work on the arrest warrant for Officer Samayoa. Further, Jenkins testified that she held no animus against Plaintiff. Based on the contention that Plaintiff cannot produce evidence to refute the allegations in the investigation that resulted in his termination, Defendants contend they should prevail on the retaliation claim because they can provide legitimate, independent reasons for Plaintiff's termination. *See, e.g., Vatalaro v. County of Sacramento*, 79 Cal. App. 5th 367, 384-85 (2022) (holding that the termination of plaintiff because he as insubordinate, disrespectful, and dishonest was sufficient to overcome claim for retaliation).

With regard to the reasons for the adverse employment actions taken against Plaintiff, the record is replete with disputed issues of fact precluding summary judgment. Whether the reasons given for Plaintiff's termination are pretextual or not is an open factual question. Whether or how much the protected complaints factored into the decisions to investigate Plaintiff, place him on administrative leave, and ultimately to terminate him are open factual questions. Accordingly, the Court DENIES Defendants' motion for summary judgment as to the second cause of action for

retaliation.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 11, 2026



JEFFREY S. WHITE
United States District Judge